UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN KAKOWSKI, | No. 2:16-cv-2549 AC P |
| Plaintiff, | |
| v. | ORDER and |
| COUNTY OF SACRAMENTO, et al., | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

I.     Introduction

Plaintiff proceeds pro se with a civil rights complaint filed pursuant to 42 U.S.C. § 1983, supported by multiple separately filed exhibits; a request for leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915; and a motion for preliminary injunctive relief. Plaintiff commenced this action while incarcerated at the Sacramento County Main Jail.[1] He is now a state prisoner under the authority of the California Department of Corrections and Rehabilitation (CDCR). CDCR's Inmate Locator website indicates that plaintiff entered CDCR custody on January 29, 2018, and is now incarcerated at San Quentin State Prison.[2] Plaintiff's notice of

---

[1] Plaintiff stated that he was "out to court" from Nevada under the federal Interstate Agreement on Detainers (IAD) Act, and California Penal Code § 1389. See ECF No. 1 at 5.

[2] See http://inmatelocator.cdcr.ca.gov/ (Inmate Locator website operated by the California Department of Corrections and Rehabilitation). This Court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201; see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th

1

change of address to "Tracy," filed January 31, 2018, appears to indicate that plaintiff was temporarily incarcerated at CDCR's Deuel Vocational Institute prior to being moved to San Quentin State Prison. See ECF No. 18. The Clerk of Court will be requested to verify this matter and indicate on the docket plaintiff's current place of incarceration.

Plaintiff has consented to the jurisdiction of the undersigned Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c) and Local Rule 305(a). See ECF No. 4. For the reasons that follow, plaintiff's request to proceed in forma pauperis is granted; plaintiff's complaint is dismissed with leave to file a First Amended Complaint; and the undersigned recommends that plaintiff's request for preliminary injunctive relief be denied as moot.

II.     In Forma Pauperis Application

Plaintiff has submitted an affidavit and jail trust account statement that make the showing required by 28 U.S.C. § 1915(a). Accordingly, plaintiff's request to proceed in forma pauperis, ECF No. 2, will be granted.

Plaintiff must nevertheless pay the statutory filing fee of $350.00 for this action. See 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

III.    Multiple Filed Documents Do Not Constitute an Operative Pleading

Plaintiff's complaint is 66 pages in length including exhibits. ECF No. 1. However, plaintiff has filed ten additional sets of exhibits totaling nearly 200 pages. See ECF Nos. 5-9, 13-7. Plaintiff's excessive filings do not comprise a cohesive pleading. This court should not be

---

Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.").

required to parse through multiple exhibits to identify in the first instance what may be relevant to plaintiff's claims. All of plaintiff's factual allegations must be contained in one operative complaint, with all pertinent exhibits attached. For this reason, and those set forth below, amendment of the complaint is required.

Plaintiff's complaint will be dismissed and his separately filed exhibits will be disregarded. Plaintiff will be granted leave to file a comprehensive First Amended Complaint (FAC), with all pertinent exhibits attached. To assist plaintiff in the preparation of a FAC, the court has screened plaintiff's initial complaint pursuant to 28 U.S.C. § 1915A, and provides the following information and legal standards as guidance.

IV. Screening of Plaintiff's Civil Rights Complaint

A. Legal Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).

Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly at 555). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Iqbal at 678 (quoting Twombly at 570). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly at 557).

A pro se litigant is entitled to notice of the deficiencies in his or her complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

    B. <u>Plaintiff's Status When He Filed the Complaint – Pretrial Detainee?</u>

It is not clear from the complaint whether plaintiff was a pretrial detainee during his incarceration at Sacramento County Jail. Assuming so, then as a general rule plaintiff's challenges to the conditions of his confinement are properly analyzed under the Fourteenth Amendment's Due Process Clause:

> Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause. See Bell v. Wolfish, 441 U.S. 520, 535 (1979) (holding that, under the Due Process Clause, a detainee may not be punished prior to conviction). Under both clauses, the plaintiff must show that the prison officials acted with "deliberate indifference."

Castro v. County of Los Angeles, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc) (setting forth elements of Fourteenth Amendment failure-to-protect claim by pretrial detainee), cert. denied sub nom. Los Angeles County v. Castro, 137 S. Ct. 831 (2017); see also Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003) (although a pretrial detainee's claim of medical deliberate indifference is analyzed under the Fourteenth Amendment Due Process Clause, rather than the Eighth Amendment, the same standards apply).

Although the court is unable to make the assessment at this time, plaintiff should clarify in his FAC his detention status while incarcerated at Sacramento County Jail and identify the appropriate standards for his legal claims.

4

C.  Plaintiff's "Shotgun" Complaint

Plaintiff's complaint makes the following unrelated claims: (1) deliberate indifference to plaintiff's serious medical needs due to the failure of Sacramento County officials, particularly Dr. Janet Abshire, to continue the medications and supplements previously prescribed for the treatment of plaintiff's hepatitis and allergies when he was in the custody of the Riverside County and Los Angeles County jails; (2) improper changes to plaintiff's classification status requiring, inter alia, that he spend eight days in administrative segregation; (3) inhumane conditions of confinement by requiring plaintiff to sleep on a "mattress" without padding, allegedly comprised of plastic on a concrete floor, for a period of 30 days when he was moved from administrative segregation to "A(high)" status; (4) imposition of financial charges for plaintiff's legal mail supplies despite his indigence; and (5) the opening and reading of plaintiff's legal mail by custodial staff, outside plaintiff's presence.

These disparate claims comprise a "shotgun" or "kitchen-sink" complaint, "complaints in which a plaintiff brings every conceivable claim against every conceivable defendant." Gurman v. Metro Hous. & Redevelopment Auth., 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011) (fn. omitted). Therefore, the complaint does not comply with Federal Rule of Civil Procedure 20(a)(2), which provides that the right to relief against multiple defendants must arise out of common events and reflect common questions of law or fact. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("[u]nrelated claims against different defendants belong in different suits."). In a FAC, plaintiff should limit his claims to those that arise from common questions of law or fact; alternatively, plaintiff may name a single defendant and bring as many claims as he has against that party, see Fed. R. Civ. P. 18(a).

D.  Failure to Link Claims Against Defendants

The complaint names three defendants: Sacramento County, Sacramento County Sheriff Scott Jones, and Dr. Janet Abshire. As currently framed, the complaint fails to state a cognizable claim against any of these three defendants.

"To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the

5

alleged violation was committed by a person acting under the color of State law." Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)). Significantly, "[t]he inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted.)

Broadly assuming that plaintiff intended to name Sacramento County Sheriff Scott Jones in both his personal and official capacities, the complaint does not contain factual allegations sufficient to allege a personal-capacity suit against the Sheriff. Specifically, the complaint does not allege that Sheriff Jones personally participated in or directed any alleged violation of plaintiff's rights. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation; there is no respondeat superior liability under section 1983.").

In contrast, suing Sheriff Jones in his official capacity is construed as a suit against the Sacramento County Sheriff's Office, that is, Sacramento County. "Official-capacity suits, in contrast [to personal-capacity suits], 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165-66 (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n.55 (1978)). Local governmental entities, particularly local law enforcement entities, may be held liable under Section 1983 for civil rights violations. See e.g. Karim–Panahi v. Los Angeles Police Dept., 839 F.2d 621, 624 n.2. However, the Supreme Court has limited such liability to the unconstitutional implementation or execution of a municipal "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690 (fn. omitted). "[I]t is when execution of a [local] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 693.

////

Here, plaintiff's sweeping allegations do not suffice. See e.g. ECF No. 1 at 7 ("constitutional violations due to a self-written policy, custom & practice, adopted & implemented by the County of Sacramento & Sacramento Sheriff 'Scott Jones' (both policy-makers"). This inadequacy is discussed further below.

Plaintiff alleges that the third named defendant, Dr. Janet Abshire, was deliberately indifferent to his serious medical needs. The general allegations of the instant complaint against Dr. Abshire are inadequate for the reasons set forth below.

        E.        <u>Legal Standards Relevant to Plaintiff's Claims</u>

                1.        <u>Deliberate Indifference to Serious Medical Needs</u>

The complaint alleges that plaintiff suffers from hepatitis and sinus/allergy conditions, for which he previously received regular medications and supplements. Plaintiff alleges that all of his medications and supplements were stopped when he arrived at the Sacramento County Jail on May 17, 2016; as a result, plaintiff has suffered liver damage, weight loss, and emotional duress. Plaintiff submitted medical grievances which were allegedly ignored. On July 6, 2016, plaintiff was seen by Dr. Abshire, who allegedly ordered several tests and stated that she would follow up. ECF No. 1 at 6. Additional tests were conducted in July and August 2016. Id. at 7. However, as of October 2016, when plaintiff filed his complaint, he had "not been given any diagnosis concerning hepatitis testing nor received any treatment." Id. at 8. These allegations fail to describe what testing or treatment has been denied plaintiff, and how Dr. Abshire was responsible.

"[T]he test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong . . . is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted). The plaintiff must also show that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety;

the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

In a FAC, plaintiff must specifically describe his serious medical needs, what Dr. Abshire did or failed to do that violated his rights, the circumstances that show Dr. Abshire was aware that her specific actions or failure to act risked further harm to plaintiff, and the harm that resulted from her actions or failure to act.

2. Classification

In his second claim, plaintiff challenges his 8-day placement in administrative segregation, then "high security," "with no warning/write-up-nothing" based on "classification claimed pending escape charges." ECF No. 1 at 9.

When a pretrial detainee challenges conditions of his confinement, "the proper inquiry is whether those conditions amount to punishment," because the Fourteenth Amendment's Due Process Clause does not permit punishment prior to an adjudication of guilt. Bell v. Wolfish, supra, 441 U.S. at 535 n.16. "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." Id. at 535 n.16 (citation and internal quotation marks omitted). However, not every pretrial restriction amounts to punishment. The Supreme Court "has recognized a distinction between punitive measures that may not constitutionally be imposed prior to a determination of guilt and regulatory restraints that may." Id. at 537 (citations omitted). "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Id. at 538 (citation omitted). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Id. at 539 (fn. omitted).

It is unlikely that plaintiff can state a cognizable claim challenging his classification status or temporary placement in administrative segregation. In general, prisoners have no federally-protected liberty interest in their classification status. See Hernandez v. Johnston, 833 F.2d 1316,

1318 (9th Cir. 1987). "[I]t is well settled that prison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status." McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir.1990) (citations and internal quotation marks omitted). Accord, Garcia v. Biter, 2016 WL 2625840, at *2 n.2, 2016 U.S. Dist. LEXIS 61252, at *5 n.2 (Case No. 1:13-cv-0599 LJO SKO P) (E.D. Cal. May 9, 2016) ("Plaintiff's housing status and other custody or classification factors are left to the sound discretion of prison officials.").

### 3. Cruel or Unusual Punishment

Plaintiff contends that he was "inhumanely" required to sleep for thirty days on the concrete floor without an adequate mattress. The Eighth Amendment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and quotations omitted). To maintain this claim plaintiff must plausibly allege that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. See discussion of medical care claim, above. However, because valid security concerns may limit a prisoner's access to certain materials within his cell, plaintiff must better articulate the reasons for, and conditions relevant to, the alleged requirement that he sleep without an adequate mattress for 30 days; plaintiff must also identity the officials responsible for this decision.

### 4. Charges for Legal Supplies

Alleging generally a violation of his rights under the "5th/14th Amendment of the U.S. Constitution or whatever the court deems proper," plaintiff complains that he has been "charged for drafting paper, pencils, and pre-embossed [pre-stamped] envelopes I was using for legal work." ECF No. 1 at 13. Plaintiff alleges he was charged $3.00 a week "for months" before he realized it, as he "never signed or agreed to any such contract." Id. He adds, "[f]urthermore I am being charged for items I am not even receiving (i.e. comb)." Id. Plaintiff also alleges that the company supplying the embossed envelopes is "taxing" them, charging $.70 although the

9

envelopes are only $.53 at the post office. Plaintiff contends that the Sacramento County Sheriff's Department is allowing these problems to persist as a matter of policy, despite the resulting violation of plaintiff's constitutional rights to legal materials and postage. Id. Plaintiff seeks reimbursement for his "outstanding balance" for legal work involving two identified cases.

The constitutional right at issue is a prisoner's First Amendment right to access the courts. "[P]risoners have a constitutional right of access to the courts," and "indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." Bounds v. Smith, 430 U.S. 817, 821, 824-25 (1977). "This is not to say that economic factors may not be considered." Id. at 825. Although indigent prisoners' right to access the courts includes the right to "postage stamps at state expense to mail legal documents . . . a state may adopt reasonable postage stamp regulations." King v. Atiyeh, 814 F.2d 565, 569 (9th Cir.1987) (citations omitted), overruled on other grounds by Lacey v. Maricopa County, 693 F.3d 896, 925-28 (9th Cir. 2012).

The essential inquiry is whether the challenged charges or practices resulted in "actual injury" to plaintiff, that is, "a specific instance in which he was actually denied access to the courts." Vandelft v. Moses, 31 F.3d 794, 798 (9th Cir. 1994). To state a cognizable denial of access claim under the First Amendment, plaintiff must identify "the underlying cause of action and its lost remedy." Christopher v. Harbury, 536 U.S. 403, 416 (2002) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513-515 (2002)).

As presently framed, plaintiff has alleged no "actual injury" as a result of the challenged charges and therefore fails to state a cognizable claim.

### 5. Legal Mail

Plaintiff alleges that custodial staff have opened and read his legal mail, outside his presence, in contravention of Supreme Court authority. As articulated by the Supreme Court, see Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974):

> We think it entirely appropriate that the State require any such communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment. It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond

10

> with a prisoner, first identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar. As to the ability to open the mail in the presence of inmates, this could in no way constitute censorship, since the mail would not be read. Neither could it chill such communications, since the inmate's presence insures that prison officials will not read the mail. The possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants prison officials' opening the letters.

Plaintiff contends that Sacramento County Jail does not comply with this policy or protocol, and also inappropriately slides incoming mail under cell doors at night, violating prisoner privacy rights. ECF No. 1 at 13-5. Plaintiff broadly contends, id. at 16 (sic):

> The jail policy is so deficient and the County of Sacramento & Sheriff Scott Jones knowingly have failed to embrace a better policy, resulting in failing to train subordinates on inmates rights to privacy resulting in Deputys to be under free rein or little or no authority & allowing Deputys to adopt & implement self-written policies which in effect violated plaintiff's rights.

In support of his motion for preliminary injunctive relief, plaintiff filed the verified declaration of Felicia Villalobos, Records and Mailroom Officer for Sacramento County Main Jail, who avers that jail policies are consistent with federal law and the mail room now treats all mail directed to county inmates from specified legal entities as "legal mail," even if not clearly marked as such. Although this exhibit appears to support plaintiff's allegations that some of his legal mail may have been opened outside his presence because not so designated, is also demonstrates that this practice has been corrected. See ECF No. 11 (Motion for Preliminary Injunctive Relief, Ex. A (Declaration of Felicia Villalobos, Sacramento County Sheriff's Department, Records Officer, and Mailroom Officer at the Sacramento County Main Jail). Ms. Villalobos avers in pertinent part, id. at ¶¶ 6-12:

> 6. Pursuant to the Sacramento County Main Jail policy, all incarcerated inmates in Sacramento County correctional facilities are permitted to correspond legally and confidentially with the following legal entities: State and Federal courts, members the State Bar and other licensed attorneys or legal representatives, holders of public office, the U.S. Department of Homeland Security, the U.S. Department of Justice, embassies and consulates, health care professionals, judges, the Corrections Standards Authority, the Division Commander or the Chief Deputy of Correctional Services, administrators of the Main Jail or RCCC grievance system, and representatives of the news media.

11

7. This policy is also contained in the Sacramento County Sheriff's Department Correctional Services Inmate/Detainee Handbook and provided to all inmates incarcerated in all Sacramento County correctional facilities.

8. Any correspondence sent to an incarcerated inmate must be clearly labeled "Legal Mail" on each individual piece of correspondence in order to be treated as confidential legal mail.

9. Pursuant to the Sacramento County Main Jail Policy, all legal mail, that is labeled as "Legal Mail" and received from a legal entity, will be opened in the presence of the receiving inmate and signed for by the inmate.

10. In September of 2016, it was brought to my attention that there was correspondence being sent to inmates incarcerated at the Sacramento County Main from legal entities, such as the Superior Court, the Court of Appeal and the Federal Court, that was not being treated as legal mail because it was not marked as "Legal Mail."

11. In response to this issue, and to ensure the confidentiality of this type of correspondence, I requested and received permission to treat all incoming mail received from a legal entity as "Legal Mail," regardless if it was marked on the envelope or not.

12. It is my practice and the current policy at the Sacramento County Main Jail to treat all mail received from any legal entity as "Legal Mail" even if it is not marked as "Legal Mail" on the envelope and delivered to the inmate in the manner described in item number 9.

In his motion for preliminary injunctive relief, plaintiff contends that the problem has not been remedied, i.e. that "contrary to Ms. Villalobos' statement, the complete opposite is still occurring." ECF No. 11 at 1. Nevertheless, as currently framed, plaintiff's broad contentions fail to plausibly allege that these matters were customary or routine and that Sheriff Jones in his official capacity "adopted and promulgated" such violations as a matter of policy. Monell, 436 U.S. at 690. Plaintiff's allegations may more plausibly be directed toward specific jail officials. In either context, plaintiff must provide more specific information as to the who-what-when-and where of such alleged violations.

V. Motion for Preliminary Injunctive Relief

Plaintiff moves for the following preliminary injunctive relief, ECF No. 11 at 2:[3]

---

[3] The court construes plaintiff's motion as an ex parte request for a temporary restraining order. Under Rule 65, Federal Rules of Civil Procedure, "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party" only if "specific facts in an affidavit or a

> I am asking for an injunction that orders Sheriff Dep. Villalobos or her supervisor Sgt. Hernandez to personally be told and held accountable to hand me my mail and open it and have my signature for it in their presence.

When a prisoner is transferred from one facility to another, claims for injunctive relief from conditions at his former place of incarceration are generally rendered moot. See Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001) (citing Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir.1995)). Exceptions include system-wide requests for injunctive relief or a reasonable possibility that plaintiff he will be re-incarcerated at the original facility. Neither exception is apparent in the instant case. Accordingly, the undersigned recommends that plaintiff's request for preliminary injunctive relief be denied as moot.

### VI. Leave to Amend

Plaintiff is granted leave to file a First Amended Complaint (FAC). Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading, because "an amended pleading supersedes the original." Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992) (citations and internal quotation marks omitted); see also Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (an "amended complaint supersedes the original, the latter being treated thereafter as non-existent"). Accordingly, plaintiff's FAC must identify each claim and the alleged involvement of each defendant, and reference and attach all relevant exhibits, creating one cohesive document.

////

---

verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1). Obtaining ex parte relief under Rule 65 is limited to situations where notice to the adverse party would likely prove useless. See Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006) (citing cases). The legal standards for obtaining a temporary restraining order are essentially identical to those for obtaining a preliminary injunction. See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc., 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001); Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). In evaluating the merits of a motion for preliminary injunctive relief, the court considers whether the movant has shown that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); accord Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009).

Plaintiff is reminded that he may name as defendants only persons who personally participated in the alleged deprivation of his constitutional rights. Johnson v. Duffy, supra, 588 F.2d at 740. The amended complaint must contain a caption that includes the names of all defendants. Fed. R. Civ. P. 10(a).

Plaintiff may not change the nature of this suit by alleging new, unrelated claims. George, 507 F.3d at 607. Nor, as explained above, may he bring unrelated claims against multiple defendants. Id. A "shotgun" or "scattershot" approach naming unrelated claims against multiple defendants is unacceptable.

### VII. Summary of Order for Pro Se Litigant

You are granted in forma pauperis status to proceed in this action; you will pay the filing fee over time with deductions from your prison trust account.

You have filed excessive documents in this case, including a complaint and multiple separately filed exhibits that cannot reasonably be construed as an operative pleading. Your complaint has been dismissed with leave to file a First Amended Complaint (FAC) that consists of one complete document, including all relevant exhibits.

The court has screened your initial complaint and finds that it does not state a cognizable claim against any defendant because your allegations fail to identify the specific conduct or failure to act of each defendant that allegedly violated your constitutional rights. The court has provided you guidance in stating cognizable claims in a FAC, including the necessity to link specific allegations with specific defendants.

If you do not file a FAC within thirty days, the undersigned will recommend the dismissal of this action without prejudice for failure to prosecute.

The court recommends the denial of your motion for preliminary injunctive relief because the matter became moot when you were transferred to CDCR.

### VIII. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's request to proceed in forma pauperis, ECF No. 2, is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff

is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's complaint, ECF No. 1, is dismissed with leave to file a proposed First Amended Complaint (FAC) within thirty (30) days after service of this order, subject to the legal standards set forth herein.

4. Failure of plaintiff to timely file a FAC will result in a recommendation that this action be dismissed without prejudice.

5. The Clerk of Court is directed to: (1) send plaintiff, together with a copy of this order, a copy of the form complaint used by prisoners in this district to pursue a civil rights action under 42 U.S.C. § 1983; (2) designate on the docket plaintiff's current address (see n.2, supra, and related text);[4] and (3) randomly assign a district judge to this case.

Additionally, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for preliminary injunctive relief, ECF No. 11, be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 8, 2018

*Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

---

[4] Prior to making this designation, the Clerk of Court should contact CDCR and confirm plaintiff's place of incarceration.